UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

HENRY SMITH,

Defendant.
_________________________________/

Case No. 19-20350
District Judge Victoria A. Roberts
Magistrate Judge Elizabeth A. Stafford

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS (Doc. #13)**

## I. INTRODUCTION

The Oakland County Sherriff's Deputies ("officers") arrested Henry Smith ("Smith") when a search in connection with a traffic stop revealed a firearm in the car and cocaine in Smith's pocket.

The United States charged Smith with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and possession of a controlled substance, in violation of U.S.C. § 844(a). Smith's indictment stems from citizen complaints that xxx Ditmer was being used as a drug and illegal gambling house.

Before the Court is Smith's Motion to Suppress Evidence Based on Illegal Arrest, Search, and Seizure [ECF No. 13].

The court finds (1) there was probable cause to stop the vehicle in which Smith was a passenger; (2) officers had reasonable suspicion that Smith was engaged in criminal activity; (3) officers lawfully conducted a pat down search of Smith after he was removed from the vehicle; (4) officers lawfully searched the vehicle for weapons

because Smith could have been armed and dangerous; (5) officers had probable cause to arrest Smith.

Smith's motion is **DENIED**.

## II. ANALYSIS

Smith argues that the officers violated his Fourth Amendment rights when they searched and arrested him. Smith says officers did not have reasonable articulable suspicion to pull over the Durango, nor probable cause to conclude that he was engaged in criminal activity at the time of his arrest. Smith states the Court must suppress all evidence obtained as fruit of an illegal search and seizure.

Given the totality of the circumstances and giving due weight to the factual inferences drawn by the police officers, the Court finds that the officers had probable cause to stop of the vehicle. They also had reasonable suspicion to detain him, search him, and probable cause to arrest him.

### A. Police had Probable Cause to Stop The Durango

When police officers stop a vehicle – regardless of the duration and purpose of the stop – it must comport with the Fourth Amendment requirement of reasonableness. *Whren v. United States,* 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). "An automobile stop is considered reasonable where the police have probable cause to believe that a traffic violation has occurred." *United States v. Copeland,* 321 F.3d 582, 592 (6th Cir.2003) (internal citations omitted). Probable cause is defined as "reasonable grounds for belief, supported by less than *prima facie* proof

but more than mere suspicion." *United States v. Ferguson,* 8 F.3d 385, 392 (6th Cir.1993). The subjective motives or intentions of a police officer are not relevant. *Whren,* 517 U.S. at 813. An officer may "stop vehicles for any infraction, no matter how slight," even if the traffic violation is being used as a pretext for the stop. *Id.*

While stopped on a public street, the Durango blocked a roadway – a violation of Michigan law. MCL 257.676b; s*ee also United States v. Winters,* 782 F.3d 289, 296 (6th Cir. 2015)*(* "It is well-established that where an officer has probable cause to believe that a traffic violation has occurred or was occurring, the resultant stop is not unlawful and does not violate the Fourth Amendment"). These circumstances provided probable cause for officers to conclude the Durango violated Michigan law.

**B. Officers Briefly Seized Smith and Had Reasonable Suspicion That Smith Was Engaged in Criminal Activity**

Smith argues his initial seizure was unreasonable. The government says the officers had reasonable suspicion.

On April 24, 2019 – while viewing the Durango violating Michigan traffic law by parking in the middle of a public thoroughfare – officers observed an individual exit the Ditmer home and approach the Durango's driver side. Using binoculars, officers witnessed what appeared to be a hand-to-hand transaction between the individual and someone on the driver's side window. Based upon their observations, the officers initiated a traffic stop of the Durango; the vehicle pulled into a driveway near xxx Ditmer.

The officers walked up to the Durango and observed the driver's side window up and the rear driver's side window down. Smith – sitting in the rear driver's side seat – allegedly looked at the officer and then suddenly reached his hands down towards his

feet. Upon observing this action, the officer ordered Smith to place both hands outside the window; Smith complied but later pulled his hand back inside the Durango. Officers ordered all passengers to roll down their windows and extend their arms outside the vehicle until backup officers arrived. Deputy Janczarek held Smith's arm for six minutes to prevent him from reaching back into the Durango.

A threshold issue is whether Smith was seized under the Fourth Amendment during his interaction with the police. Smith says that he was; he says that he submitted to the officers and argues that, under the circumstances, a reasonable person would not have felt free to leave their presence. The Court agrees with Smith.

The Fourth Amendment prohibits "unreasonable searches and seizures" by the government. U.S. Const. amend IV; *United States v. Smith*, 594 F.3d 530, 535 (6th Cir. 2010). Fourth Amendment protections "extend to brief investigatory stops that fall short of traditional arrest." *United States v. Damitres Ward*, No. 18-3034, 2018 WL 6181644 at *3 (E.D. Mich. Nov. 27, 2018) (citing *Terry v. Ohio*, 392 U.S. 1, 19 (1968)).

Importantly, all encounters between the police and citizens are not necessarily seizures; indeed, the Sixth Circuit held that "[i]n order for a seizure to occur…the officers must use physical force or the individual must submit to the officers' show of authority." *Smith*, 594 F.3d at 535.

Where a seizure is allegedly accomplished by an officer's show of authority, the individual allegedly seized must have actually submitted to that authority; "[w]ithout actual submission, 'there is at most an attempted seizure.'" *United States v. Jones*, 562 F.3d 768, 774 (6th Cir. 2009) (quoting *Brendlin v. California*, 551 U.S. 249, 254 (2007)).

In analyzing when there is submission to authority, the Supreme Court noted, "what may amount to submission depends on what a person was doing before the show of authority[.]" *Brendlin*, 551 U.S. at 262. To determine whether an individual has actually submitted where that individual "passively acquiesces" to a show of authority, the Court looks to whether "in view of all the circumstances, a reasonable person would have believed he was not free to terminate the encounter between the police and himself." *Jones*, 562 F.3d at 774 (citing *Brendlin*, 551 U.S. at 255).

The United States Supreme Court held that circumstances indicating a seizure under the reasonable person standard include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).

A police officer ordered Smith to extend his arms outside the Durango's window and Smith submitted to the officers' authority by complying with the directions. Under these circumstances, Smith's acquiescence to the officer constitutes submission to a show of authority; indeed, the Court finds that "a reasonable person would have believed he was not free to terminate the encounter between the police and himself." *Jones*, 562 F.3d at 774 (citing *Brendlin*, 551 U.S. at 255).

The question then becomes, was the seizure reasonable? The court concludes it was; police had reasonable suspicion to detain and investigate under the totality of the circumstances. Once officers lawfully stop a vehicle for a traffic violation, they may order a driver and/or passenger to exit the vehicle pending completion of the stop. *Arizona v.*

*Johnson*, 555 U.S. 323, 331-32 (2009). The Court inquires whether – under these circumstances – the scope and duration of the detention transformed this legal traffic stop into an unconstitutional seizure.

It is undisputed that the initial traffic stop was constitutional and officers had reasonable suspicion that Smith was armed and dangerous. The totality of the circumstances analysis permits police officers "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States v. Martin,* 289 F.3d 392, 398 (6th Cir.2002).

It was reasonable that officers believed – based upon their experience and training – that Smith possessed a weapon. Accordingly, since the officers stated particular facts from which they reasonably inferred that Smith was armed and dangerous, there was reasonable suspicion to search Smith.

### C. Officers Had Reasonable Suspicion to Conduct A Lawful Pat Down Search of Smith

Although Smith does not contest the pat down search after he was removed from the Durango, the Court finds the officers had reasonable suspicion to conduct such search under the circumstances.

"A concern for officer safety permits a variety of police responses in differing circumstances, including ordering a driver and passenger out of a car during a traffic stop, ... and conducting pat-down searches upon reasonable suspicion that they

may be armed and dangerous." *Bennett v. City of Eastpointe,* 410 F.3d 810, 822 (6th Cir.2005).

During the search, officers discovered a plastic baggie in Smith's pants pocket. It tested positive for cocaine during field testing. Officers conducted no more than a pat down search of Smith after concluding there was reasonable suspicion that he was armed and dangerous.

Further, Smith briefly says that his statements to police should be suppressed. However, the record does not contain, nor does the government use to Smith's detriment, any statement he made to officers.

**D. Officers Had Reasonable Suspicion To Lawfully Search The Durango For Weapons Because Smith Could Be Armed and Dangerous**

The officers did not unlawfully seize Smith's weapon, nor violate his rights by holding his arms outside the window until backup officers arrived on the scene.

After removing Smith – who was wearing a tactical vest – from the Durango, officers observed a black Glock, .40 caliber handgun on the rear seat footboard. Notably, police found the firearm in the same area where Smith reached down.

Officers may conduct a protective search when "the officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." *United States v. McCraney,* 674 F.3d 614, 618 (6th Cir.2012). A protective sweep "is permissible even if the suspect is detained outside the vehicle because 'if the suspect is not placed under

arrest, he will be permitted to reenter his automobile, and he will then access to any weapons inside.'" *Id*.

If an officer develops reasonable and articulable suspicion of criminal activity during a traffic stop for a civil infraction, the officer may be justified in acting beyond the initial purpose of the stop to detain a motorist and conduct a warrantless search. *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999); *See Whren*, 517 U.S. at 812–13, 116 S.Ct. 1769 (reasonableness of a traffic stop does not depend upon officer's actual motivation).

The Court reviews individual factors under the totality of the circumstances to determine whether the officers had a reasonable suspicion of danger. The officers did not act until (1) Smith made eye contact with the officer, (2) the officers observed that Smith made a sudden movement and that he could potentially grab a weapon from under his seat and use it against the officers, and (3) Smith initially disobeyed orders from the officers.

Based on the totality of the circumstances, the officers were justified in using additional force to protect themselves and maintain control of the scene. *See, e.g.*, *United States v. Smith*, 594 F.3d 530, 542 (6th Cir. 2010) (officers did not violate Fourth Amendment where they reacted to a defendant's "sudden hand movement" by "grabbing" the defendant and a weapon he possessed); *Bennett v. City of Eastpointe*, 410 F.3d 810, 822 (6th Cir. 2005) ("A concern for officer safety permits a variety of police responses in differing circumstances, including ordering a driver and passenger out of a car during a traffic stop, ... and conducting pat-down searches upon reasonable suspicion that they may be armed and dangerous"); *United States v. Graham*, 483 F.3d

431, 439–40 (6th Cir.2007) ("[I]f an officer possesses a reasonable suspicion that a suspect is armed and dangerous, he may conduct a brief protective sweep of the suspect's vehicle, so long as that search is constrained to places where a weapon may be hidden").

Taken together, these circumstances provided a particularized suspicion for officers to believe Smith was armed and allowed them to lawfully seize the weapon.

**E. Officers Had Probable Cause to Arrest Smith**

An officer must have probable cause to believe a criminal offense has been or is being committed to arrest an individual without a warrant under the Fourth Amendment. *Maryland v. Pringle,* 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003). Probable cause to make an arrest exists if the facts and circumstances within the officer's knowledge were "sufficient to warrant a prudent [person] in believing that the [arrestee] had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91 (1964)). The existence of probable cause should be determined based on the totality of circumstances. *Id.*

The court inquires into whether the officers were justified in their belief that Smith had committed or was committing a crime. *Id.* At the time of the arrest, officers knew that Smith was a passenger in a car leaving a suspected drug-dealer's house, observed an apparent hand-to-hand transaction, noticed Smith make a sudden movement threatening officer safety, discovered a gun on the floorboard of the Durango, and uncovered drugs from Smith's possession. Based on the above, officers did have probable cause to arrest Smith.

### 1. Evidence Seized Was Not Fruit of Illegal Activity

Smith says his Fourth Amendment rights were violated; the Government asserts that Smith – as a passenger – did not have a reasonable expectation of privacy to directly contest the legality of the evidence seized during a lawful vehicle stop.

Smith's Fourth Amendment rights were not violated. A passenger does not have a possessory interest in a vehicle or a legitimate expectation of privacy in a vehicle search by police. *Rakas v. Illinois*, 439 U.S. 128, 134 (1978) ("A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed."). "A defendant [must] prove a legitimate expectation of privacy as a prerequisite to challenging assertedly unlawful police conduct." *United States v. Sanchez,* 943 F.2d 110, 113 n. 1 (1st Cir.1991) (quoting *United States v. Britton*, 335 F. App'x 571, 574 (6th Cir. 2009)). A passenger with no possessory interest in a vehicle lacks a sufficient privacy interest under the Fourth Amendment to challenge the subsequent search of the vehicle*. See, e.g.*, *United States v. Torres-Ramos*, 536 F.3d 542, 549 (6th Cir. 2008) (defendants did not have a reasonable expectation of privacy as passengers in the vehicle"); *United States v. Ellis*, 497 F.3d 606, 612 (6th Cir. 2007) ("a passenger does not have a legitimate expectation of privacy in the searched vehicle").

However, "a passenger may still challenge the stop and detention and argue that the evidence should be suppressed as fruits of illegal activity." *United States v. Ameling,* 328 F.3d 443, 447 n. 3 (8th Cir.2003); *see also United States v. Campbell*, 549 F.3d 364, 371 (6th Cir. 2008) ("Not only the driver of a stopped vehicle, but a passenger

as well, is seized within the meaning of the Fourth Amendment and thus may challenge the legality of the stop."). In determining whether the seizure of Smith was constitutional, the Court looks at whether the traffic stop was lawful. Here, the officers had reasonable suspicion to conduct a traffic stop. So Smith – as a passenger – does not have a reasonable expectation of privacy to challenge the evidence seized by police.

### F. An Evidentiary Hearing is Unnecessary

"The defendant has the burden of showing that an evidentiary hearing is necessary when the defendant seeks to suppress evidence." *United States v. Prado*, No. 3:16-CR-00099, 2018 WL 5410967, at *3 (W.D. Ky. Oct. 29, 2018) (citing *United States v. Giacalone*, 853 F.2d 470, 482-83 (6th Cir. 1988)). "An evidentiary hearing is required 'only if the motion is sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question.'" *United States v. Abboud*, 438 F.3d 554, 577 (6th Cir. 2006) (citation and emphasis omitted). "A defendant must make some initial showing of contested facts before he is entitled to an evidentiary hearing." *United States v. McGhee*, 161 Fed. Appx. 441, 444 (6th Cir. 2005). "Evidentiary hearings on motions to suppress should be granted 'when the defendant alleges sufficient facts which if proven would justify relief.'" *Id.* (citation omitted).

Smith fails to make a sufficient initial showing of contested facts that, if proven, would warrant relief. While Smith summarily states that he disputes the officers' claim that he reached down to the rear seat floorboard or did not comply with the officer's orders, Smith fails to counter their recitation of facts or describe his account of what occurred. Smith does not allege sufficient facts to warrant an evidentiary hearing.

## III. CONCLUSION

The police officers relied upon articulable and objective facts that gave rise to reasonable suspicion of criminal activity. This was sufficient for them to stop the Durango, investigate the occupants, and seize the gun and cocaine that Smith possessed. The officers later had probable cause to arrest Smith.

The Court **DENIES** Smith's motion to suppress.

**IT IS ORDERED**.

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: September 23, 2019